891 F.2d 294
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FLAIR RESOURCES, LTD., a British Columbia, Canada
Corporation, John M. Young, President, and John M.
Young, personally, Plaintiffs-Appellants,
v.
PEAT MARWICK INTERNATIONAL, a general partnership, William
H. Kilkenny, personally, et al., Defendants-Appellees.
 No. 88-4001.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 14, 1989.
Decided Dec. 5, 1989.
As Amended on Denial of Rehearing Feb. 21, 1990.
 
 Before PREGERSON, TROTT and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Flair Resources, Ltd. ("Flair") and its president, John M. Young ("Young"), appeal from the decision of the district court dismissing, on the grounds of forum non conveniens, lack of venue, and lack of personal jurisdiction, their diversity action charging fraud, negligence, and contractual violations by Peat Marwick International ("PMI") and several of its partners, Klynveld Peat Marwick Goerdeler ("KPMG") and several of its partners, and William H. Kilkenny ("Kilkenny"). We affirm.
 
 FACTS
 
 3
 Flair was a publicly traded Canadian corporation doing business in the field of mineral exploration. Young, an Irish native residing in Canada, was Flair's president. The amended complaint alleges that, in April 1982, Flair purchased the mineral rights and mine lease of a coal field in Ballingarry, Ireland, and incorporated an Irish subsidiary, Flair Resources (Ireland) Ltd. ("Flair Ireland"), to hold these interests. CR 7-8 at pp 17, 19. The complaint further alleges that Flair, in an attempt to raise the capital necessary for development of these properties, contacted Kilkenny, an Oregon resident with financial interests in Ireland. Id. at p 13. Kilkenny, in turn, recommended that Flair retain the services of Conor Crowley ("Crowley"), a partner in the Irish accounting firm of Stokes Kennedy Crowley ("Stokes Kennedy"). Id. at pp 23-25. Stokes Kennedy is also known by the name Peat Marwick Mitchell, Ireland ("PM-Ireland").
 
 
 4
 PMI was a Swiss general partnership with its only office, consisting of three professionals, five support staff, and an annual budget of approximately $2 million, in the State of New York. CR 63, Ex. A. at 116-17. The partners of PMI were the individual partners of the approximately 80 independent partnerships that operated throughout the world under the Peat Marwick name. CR 17 at p 4. Among the PMI partners were individual partners in Stokes Kennedy, as well as individual partners in Peat, Marwick, Mitchell & Co. (United States) ("PMM-U.S.") (now Peat Marwick Main & Co.). Id. at p 6. Neither the Stokes Kennedy partnership, the PMM-U.S. partnership, nor any of the other Peat Marwick partnerships around the world were themselves partners in PMI. Id.
 
 
 5
 Under the PMI partnership agreement, PMI's primary purpose was to set general professional and ethical standards that the partners of the Peat Marwick firms were expected to maintain. However, PMI had no authority to enforce compliance with those standards. Nor did PMI have authority to conduct any business or become involved in the internal affairs of any firm authorized to use the Peat Marwick name. CR 17 at pp 4-6; CR 68, Ex. A.
 
 
 6
 PMI was dissolved effective April 1, 1987. CR 17 at p 4. KPMG, also a Swiss association, was formed the same day to perform functions similar to those performed by PMI. Although KPMG's membership is composed of the various Peat Marwick partnerships, rather than their individual partners, KPMG also performs no accounting or other professional services. Id. at 7. Rather, its function, like PMI's, is to develop and promote professional and ethical standards to be maintained by Peat Marwick partners and partnerships. Id.
 
 
 7
 Larry D. Horner ("Horner"), David Deitzler ("Deitzler"), and Stanley Menasche ("Menasche") are partners in PMM-U.S. The partnership agreement establishing PMM-U.S. is separate from the Stokes Kennedy partnership agreement as well as every other Peat Marwick partnership agreement. Neither partnership shares in the other partnership's profits and neither partnership has agreed to be responsible for the other partnership's liabilities. In addition, Stokes Kennedy maintains no office, has no accounts or other property, and has never applied for permission to do business in the United States. CR 17 at pp 11-12.
 
 
 8
 Horner, Deitzler, and Menasche were also partners in PMI. Horner and Deitzler were named as class representatives for the PMI and KMPG partners. Neither Horner, Deitzler, nor Menasche is alleged to have had any part in any of the events alleged in the complaint.
 
 STANDARD OF REVIEW
 
 9
 A district court's determination that personal jurisdiction cannot properly be exercised is a question of law reviewable de novo when the underlying facts are undisputed. Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986). A district court's factual findings on jurisdictional issues must be accepted unless they are clearly erroneous. Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985).
 
 
 10
 Venue determinations are reviewed de novo as a question of law. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 841 (9th Cir.1986).
 
 
 11
 The standard of review for a district court's dismissal on the ground of forum non conveniens is abuse of discretion. Zipfel v. Halliburton Co., 832 F.2d 1477, 1481 (9th Cir.1987), cert. denied, 108 S.Ct. 2819, 100 L.Ed.2d 921 (1988).
 
 I.
 
 12
 General personal jurisdiction, which enables a court to hear cases unrelated to the forum's activities, exists if the defendant has "substantial" or "continuous and systematic" contacts with the forum state. Fields v. Sedgwick Assoc. Risk, Ltd., 796 F.2d 299, 301 (9th Cir.1986); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). "To determine if a defendant's activities qualify as 'continuous and systematic' or 'substantial' [the court] examine[s] all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there." Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir.1986). If the defendant lacks sufficient ties to support general jurisdiction, a court may still exercise specific personal jurisdiction over the defendant if the cause of action arises out of or is related to the defendant's forum activities. Scott v. Breland, 792 F.2d 925, 927 (9th Cir.1986).
 
 A.
 
 13
 Appellants contend that since several of the partners of PMI (namely, Deitzler and Menasche) are residents of Oregon, and since, for purposes of diversity jurisdiction, an unincorporated association's citizenship is taken to be that of each of its members, see United Steelworkers of America v. R.H. Bouligny, Inc., 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965), it follows that an Oregon district court has personal jurisdiction over PMI.
 
 
 14
 In this case the mere presence of several of PMI's 2500 partners in Oregon is insufficient to warrant assertion of jurisdiction over the partnership. It had no sales, conducted no business activity, held no licenses, had no employees, and had no agent for service of process in Oregon. Nor was PMI present in Oregon through the agency of any other entity, such as Peat Marwick-U.S. PMI had no control over, and derived no revenues from, Peat Marwick-U.S.; Peat Marwick-U.S. was not a partner of PMI. See Reingold v. Deloitte Haskins & Sells, 599 F.Supp. 1241, 1249-50, 1253 (S.D.N.Y.1984); Cocklereece v. Moran, 500 F.Supp. 487, 490 (N.D.Ga.1980). Accordingly, the district court lacked general personal jurisdiction over PMI.
 
 B.
 
 15
 Three conditions must be met in order to establish specific jurisdiction: (1) the nonresident defendant must purposefully conduct activities within the forum; (2) the claim must arise or result from forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir.1988). None of these factors is met. PMI conducted no activities in the forum state, the claim against PMI is unrelated to activities conducted in Oregon, and the exercise of jurisdiction over PMI in Oregon would not be reasonable.
 
 II.
 
 16
 It is well settled that, for venue purposes, an unincorporated association or partnership "resides" where the partnership has its principal place of business. See FSI Group v. First Federal Savings and Loan Assoc., 502 F.Supp. 356, 357 (S.D.N.Y.1980); see also Decker Coal, 805 F.2d at 841-42. PMI had its sole office in New York. The district court held that KPMG's principal place of business is in New York as well. Horner also resides in New York. Deitzler and Menasche reside in Oregon, as does Kilkenny. Therefore venue would only be proper in the district where the claim arose.
 
 
 17
 The question of where a claim arose is governed by federal law. Pacific Coast District, M.E.B.A. v. Alaska, 682 F.2d 797, 798 (9th Cir.1982). In Leroy v. Great Western United Corp., 443 U.S. 173, 185, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court held that:
 
 
 18
 [I]n the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility--in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)--may be assigned as the locus of the claim.
 
 
 19
 (footnote omitted) (emphasis in original).
 
 
 20
 In this case, the only plausible locus of the claim is Ireland. Essentially every event alleged in the amended complaint took place there. The mines are there, the alleged mismanagement took place there, various assurances were made there, and virtually all of the business meetings relating to the underlying transactions were held there. Given these facts, venue was improperly laid in the district of Oregon.
 
 III.
 
 21
 Because the action was appropriately dismissed for lack of personal jurisdiction and venue, it is unnecessary to consider whether dismissal is also warranted on grounds of forum non conveniens and absence of an indispensable party. Appellants also contend that the district court erred: (1) in ruling on certain jurisdictional issues where determination of those issues was intertwined with resolution of factual issues going to the merits of the case; and (2) in dismissing on jurisdictional grounds without first conducting a class certification hearing. Neither point requires reversal.
 
 
 22
 A district court is entitled to make factual findings in order to resolve disputes over the existence of personal jurisdiction or the propriety of a given forum. The case cited by appellants, Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc., 711 F.2d 138 (9th Cir.1983), involves a challenge to the district court's subject matter jurisdiction, and is therefore inapposite. Nor is there any support for the contention that a class certification hearing should have been conducted before ruling on the jurisdictional and venue issues, or that it would have made any difference to the outcome in this case.
 
 IV.
 
 23
 Appellees ask the court to award double costs and attorneys' fees pursuant to Fed.R.App.P. 38 and 28 U.S.C. §§ 1912 and 1927. The assignments of error are not so wholly without merit as to make sanctions appropriate. Therefore the request is denied.
 
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3